```
                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| REBECCA SPENCE, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 11-3972 (JBS/AMD) |
| v. |  |
|  | **OPINION** |
| HONORABLE RAY LAHOOD, et al., |  |
| Defendants. |  |

APPEARANCES:

Hyder A. Naqvi, Esq.
AHMED NAQVI RODRIGUEZ LLP
22 Cortland Street, 16th Floor
New York, NY 10007
    Attorney for Plaintiff

Paul J. Fishman
United States Attorney
By: Irene E. Dowdy
Assistant United States Attorney
OFFICE OF THE UNITED STATES ATTORNEY
401 Market Street, 4th Floor
P.O. Box 2098
Camden, NJ 08101
    Attorneys for Defendants

**SIMANDLE**, Chief Judge:

## I. INTRODUCTION

Plaintiff Rebecca Spence alleges that she was terminated from her job at the Federal Aviation Administration ("FAA") because of discrimination on the basis of religion, race and national origin. She brings this action against the FAA, the United States Department of Transportation ("DOT"), and U.S. Secretary of Transportation Ray LaHood. The matter before the

Court is Defendants' motion to dismiss certain claims and certain parties from this action. [Docket Item 14.]

Defendants move to dismiss all counts against the FAA and the DOT, leaving Ray LaHood as the sole Defendant, because the only proper defendant in a federal employment discrimination action is the head of the employing agency. [Def. Mot. Br. at 6-7; see 42 U.S.C. § 2000c-16(c) ("the head of the department, agency, or unit, as appropriate, shall be the defendant").] Defendants also move to dismiss all claims under the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the New Jersey Law Against Discrimination ("LAD"), N.J. Stat. Ann. § 10:5-1, et seq., because Title VII of the Civil Rights Act of 1964[1] provides the exclusive remedy for claims of class-based discrimination and retaliation in federal employment. [Id. at 5-6.] Plaintiff concedes that these dismissals are proper. [Pl. Opp'n at 4.] Accordingly, the Court will dismiss with prejudice all claims against the FAA and the DOT and all claims under § 1981 and the LAD. An accompanying Order will be entered.

The sole remaining issue is whether Plaintiff sufficiently pleads a claim of a hostile work environment under Title VII case law. Because Plaintiff fails to plead facts, accepted as true, that form a plausible basis for relief, the motion to dismiss the

---

[1] The Act, as amended, is codified at 42 U.S.C. § 2000e, et seq.

hostile work environment claim will be granted.

## II. Background

Plaintiff Rebecca Spence, also known as Khadijah Spence, is an African-American Muslim who wears a traditional head covering in public at all times, in accordance with her religious beliefs.[2] [Compl. ¶ 7.] In 2009, Plaintiff applied for the position of Management and Program Analyst with the FAA. [Id. ¶ 13.] While filling out her job application online, she checked a box indicating that she was eligible for a "derived veteran's disability preference," because her spouse resigned from the military due to an in-service injury. [Id. ¶ 14.] The hiring preference automatically added 10 points to her overall application score, which also took into account her skills and experience, among other criteria. [Id. ¶ 16.] Plaintiff was offered the job and began working at the William J. Hughes Technical Center in Atlantic City, N.J., in October 2009. [Id. ¶¶ 13.]

Plaintiff experienced no problems at work for approximately eight months and received favorable work evaluations during that time. [Id. ¶¶ 19-21.] However, in July 2010, Plaintiff's department reorganized and she was assigned a new supervisor, Isidore Venetos, who is neither African American nor Muslim. [Id.

_____

[2] These facts are drawn from the Complaint and are assumed true for the purposes of this motion.

¶ 21.] When Mr. Venetos met with his newly assigned staff, he allegedly told Plaintiff, in substance, "I bought a Quran so I can understand who you are." [Id. ¶ 23.] Plaintiff believed that he was referencing or and commenting on her head covering. [Id.] Plaintiff asserts that Mr. Venetos "immediately began to question and criticize plaintiff's work performance and berate her for no apparent reason . . . ." [Id. ¶ 24.] In addition, "several of plaintiff's co-workers made negative comments about her head covering." [Id.] One of Plaintiff's co-workers, also a Muslim woman who wore traditional head covering, told Plaintiff that someone[3] had told the co-worker, in substance, "If you take that rag off your head, you will get somewhere in the FAA." [Id. ¶ 35.]

Around the same time, the Technical Center underwent an audit and a subset of personnel records were examined, purportedly at random, for compliance with federal statutory hiring requirements and FAA regulations. [Id. ¶ 22.] Plaintiff's records were audited. [Id.] A few months later, Plaintiff was told that an error had been discovered related to her derived veteran's disability preference, and she would have to provide proof that "her husband was 100% disabled and separated from federal employment due to an in-service related disability or

---

[3] The Complaint does not explain who said this to the Plaintiff's co-worker.

unable to obtain federal employment due to that disability . . . ." [Id. ¶¶ 25-26.] In fact, Plaintiff's spouse was 30 percent disabled, and Plaintiff contends that she indicated that fact on her application. [Id. ¶¶ 15, 25-26.] Nonetheless, a personnel manager told Plaintiff that she would be terminated before her one-year probation period expired on October 26, 2010, because she did not qualify for the derived veteran's disability preference. [Id. ¶ 29.] She was terminated on October 15, 2010, "effectively den[ying] plaintiff all right of appeal with the Merit System Protection Board." [Id. ¶ 30.] Plaintiff was retained as a temporary employee to "train her replacement." [Id. ¶¶ 32-33.] The temporary position lasted through February 2, 2011, after which Plaintiff left the FAA. [Id. ¶¶ 32, 36.]

Upon termination from her permanent position, in October 2010, Plaintiff filed a Freedom of Information Act ("FOIA") request for records related to her personnel records audit. [Id. ¶ 34.] She alleges that John Wilkes, a "FOIA representative," told her, in substance, "You know they don't like Muslims here. You suffer the consequences of the choices that you make. You choose to come in here dressed like that." [Id.]

Plaintiff filed an Equal Employment Opportunity complaint of discrimination with the U.S. DOT Departmental Office of Civil Rights, and the agency dismissed her claim on April 5, 2011. [Id. ¶ 6.] Plaintiff then filed the present action, alleging six

5

counts: discrimination on the basis of race, national origin[4] and religion under Title VII [Id. ¶¶ 46-54]; retaliation in violation of Title VII [Id. ¶¶ 55-57]; retaliation in violation of the 42 U.S.C. § 1981 [Id. ¶¶ 40-45]; and racial and religious discrimination and retaliation under the LAD. [Id. ¶¶ 58-60.]

### III. Analysis

#### A. Jurisdiction

The Court has jurisdiction over this action pursuant to its 28 U.S.C. § 1331 federal question jurisdiction and its 28 U.S.C. ¶ 1343(a)(4) civil rights jurisdiction. The Court has supplemental jurisdiction over the LAD claims pursuant to 28 U.S.C. § 1367.

#### B. Standard of Review

In reviewing a complaint on a motion to dismiss, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks

---

[4] The Court cannot find in the Complaint an assertion of Plaintiff's national origin. Defendants cannot either. [Def. Mot. Br. at 1 ("national origin (not stated)").]

omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Allegations that are no more than legal conclusions are not entitled to the assumption of truth. Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012). To determine if a complaint meets the pleading standard, the Court must strip away conclusory statements and "look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." Id. (internal quotation marks omitted).

### C. Hostile work environment claim under Title VII

To the extent that Plaintiff brings a hostile work environment claim in her Complaint, Defendants argue that the claim should be dismissed for failure to state a claim. [Def. Mot. Br. at 7.] Defendants note that Plaintiff does not use the words "hostile work environment," or expressly address the elements of a hostile work environment claim in the Complaint. [Id.] Rather, Plaintiff brings separate, general claims for "racial discrimination," "national origin discrimination" and "religious discrimination" under Title VII. [See Compl. ¶¶ 46-54.] Defendants, "for the sake of completeness," argue that Plaintiff fails to state a hostile work environment claim. [Def. Mot. Br. at 7.] If the factual content in the complaint is

7

sufficient to state a claim for relief that is plausible, the motion to dismiss the hostile work environment claim will be denied.

To establish a hostile working environment claim against an employer, a plaintiff must prove: (1) the employee suffered intentional discrimination on the basis of race, national origin or religion, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person who belonged to the same protected class, and (5) the existence of respondeat superior liability. Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009). The "sine qua non of a hostile work environment claim is a 'workplace . . . permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]'" McKinnon v. Gonzales, 642 F. Supp. 2d 410, 421 (D.N.J. 2009) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002)). The conduct "must be extreme to amount to a change in the terms and conditions of employment." Feeney v. Jeffries & Co., Inc., No. 09-2708, 2010 WL 2629065, at *5 (D.N.J. June 28, 2010) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). Courts must determine whether an environment is sufficiently hostile or abusive by "'looking at all the

circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Faragher, 524 U.S. at 787-88 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993)). The Supreme Court has stated repeatedly that Title VII is not a "general civility code" and that "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" do not give rise to liability under Title VII. Id. at 788.

Defendants argue that Plaintiff does not allege facts sufficient to address any of the elements of a hostile work environment claim. [R. Br. at 3.] Defendants focus in particular on the second element and argue that the conduct alleged does not "begin to approximate the level of pervasive, discriminatory hostility necessary to ground a hostile work environment claim." [Def. Mot. Br. at 9 (quoting McKinnon, 642 F. Supp. 2d at 423).]

The conduct that appears to form the basis of Plaintiff's hostile environment claim may be summarized succinctly. First, Plaintiff's supervisor told her "I bought a Quran so I can understand who you are"[5] and began to criticize her work and

---

[5] It is not clear that such a remark is offensive; the supervisor said nothing derogatory about Plaintiff or about the Quran. An effort to better understand an employee's religious

9

"berate her for no apparent reason . . . ." [Compl. ¶¶ 23-24.] Second, "several of plaintiff's co-workers" made "negative comments" about her traditional head covering. [Id.] Third, someone told one of Plaintiff's Muslim co-workers that "If you take that rag off your head, you will get somewhere in the FAA." [Id. ¶ 35.] Finally, after her termination, Plaintiff was told by John Wilkes, a FOIA representative, that "You know they don't like Muslims here. You suffer the consequences of the choices that you make. You choose to come in here dressed like that." [Id. ¶ 34.]

The Court finds that Plaintiff fails to state a prima facie case for a hostile work environment claim because the factual content of the Complaint does not suggest that the discrimination was pervasive and regular, or that it was sufficiently severe, extreme or abusive, or that it unreasonably interfered with her work performance. The statements by Plaintiff's supervisor, co-workers and FOIA representative were offensive, insensitive and, no doubt, hurtful to Plaintiff. But the language of those comments was not particularly severe, and a handful of offensive remarks directed at Plaintiff over the year that she was employed by the FAA does not indicate that the discrimination was pervasive or regular. Plaintiff does not allege that any

---

practices by consulting the teachings of that religion does not conceivably suggest hostility as much as tolerance.

individual made more than one comment to her about her religion or head covering. Such commentary in the workplace does not rise to the severity, regularity or pervasiveness required by Title VII.

An analysis of the <u>Harris</u> factors, quoted in <u>Faragher</u>, 524 U.S. at 787-88, leads to the conclusion that the environment as described in the present Complaint was not sufficiently hostile or abusive to sustain a claim under Title VII. On the issue of frequency, Plaintiff has identified two individuals, her supervisor and John Wilkes, the FOIA representative, who each directed one allegedly discriminatory comment at her, along with "several" co-workers who made "negative comments" about her head covering. This does not suggest that discriminatory comments were frequent. Plaintiff does allege that Mr. Venetos "berate[d]" her for her work performance, but Plaintiff provides no facts about his criticism, and increased scrutiny or reprimand by a supervisor, under most circumstances, does not rise to the level of a "materially adverse action" for purposes of Title VII. <u>McKinnon</u>, 642 F. Supp. 2d at 426. In addition, Plaintiff does not allege that Mr. Venetos's criticism was frequent, pervasive or severe, and there is no factual basis alleged in the present Complaint from which the Court may conclude that the comments were so severe that they amounted to a "change in the terms and conditions of employment." <u>Faragher</u>, 524 U.S. at 788.

11

The Complaint contains no facts from which the Court may infer that the discrimination unreasonably interfered with her work performance. To the contrary, Plaintiff suggests that her "performance was exemplary up to the time Mr. Venetos was assigned as her manager and her performance continued to be exemplary." [Compl. ¶ 24.] There are no allegations that Plaintiff was given less desirable assignments or that her work load, schedule or routine was altered in any way. Plaintiff does not assert that the alleged discrimination affected her ability to do her job. Plaintiff does not allege that she was physically threatened. The Court takes seriously allegations of discrimination, and Plaintiff may yet prove that she was the victim of illegal discrimination and that her termination violated Title VII. But even if that turns out to be the case, it does not necessarily follow that the work environment in which Plaintiff operated, in light of all the circumstances, was hostile to the point of being actionable as a self-standing violation of Title VII. Accepting all facts pled as true, and giving Plaintiff the benefit of all reasonable inferences, the Court nonetheless finds that Plaintiff has not alleged factual content sufficient to provide a plausible basis for relief. Defendants' motion to dismiss any hostile work environment claim will be granted.

Plaintiff, even now, does not argue that the factual content

in her Complaint supports a prima facie case of a hostile work environment claim under the governing pleading standards established in Iqbal and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). Rather, Plaintiff asserts that her claim should be governed by "the extremely lenient notice pleading requirements of the Federal Rules" [Pl. Opp'n at 11], but Plaintiff makes no attempt to explain why the heightened pleading standard of Iqbal is inapplicable here. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (observing that, after Iqbal, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss"). Plaintiff relies primarily on a Supreme Court case from 1957[6] to argue that the pleading requirement for discrimination and civil rights claims is notice pleading. [Id. at 8.] While it is true, as Plaintiff states, that complaints need not recite each element of a prima facie case of discrimination, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002), and that the purpose of pleadings is to give notice of the claim being made, see, e.g., Cordero v. AFI Food Serv., LLC, No. 10-5598, 2012 WL 5989424, at *4 (D.N.J. Nov. 29, 2012), notice pleading is no longer sufficient to survive a motion to

---

[6] Conley v. Gibson, 344 U.S. 41, 47-48 (1957). The Conley standard was displaced in 2007 in Twombly, 550 U.S. at 561-63.

13

dismiss. See Iqbal, 556 U.S. at 680 (distinguishing a conceivable or possible claim from one that is plausible). Merely alleging discriminatory conduct cannot save Plaintiff's claim for a hostile work environment.

Plaintiff further argues, without citations to any authority, that it is premature to determine whether the alleged discrimination was sufficiently severe or pervasive, because an analysis of the Harris factors "cannot properly be measured without formal discovery." [Pl. Opp'n at 10.] This simply is not the case. See, e.g., Manley v. Mem. Hosp. of Salem, No. 11-2117, 2012 WL 32926, at *2 (D.N.J. Jan. 5, 2012) (dismissing a hostile work environment claim after reciting the totality of the circumstances requirement); Feeney, 2010 WL 2629065, at *5 (dismissing a hostile work environment claim after conducting a totality of the circumstances analysis); Waiters v. Hudson Cnty. Corr. Cntr., No. 07-421, 2010 WL 1838468, at *4-*5 (D.N.J. May 5, 2010) (same). A plaintiff does not need, nor is she entitled to, discovery before she must plead sufficiently a claim for a hostile work environment, which necessarily depends on conduct and communications observed and received by the plaintiff in the first place. The Federal Rules of Civil Procedure clearly anticipate that a claim must first be pled by stating grounds which make such a claim plausible before discovery is due from the defendant; nowhere is this principle more valid than in the

14

present circumstance, where Plaintiff is in the best position to know what, if anything, was said or done to her to render her workplace environment as hostile due to prohibited discrimination.

The result here is consistent with other Title VII hostile work environment cases in this District that were dismissed, despite allegations of similar or, in some cases, more extreme conduct. In Manley, the plaintiff, an African American female, pled without much detail that her employer told her they would "get rid of her" because of her race, assigned her to less favorable work shifts and assignments, isolated her from other workers, and used racial slurs. Manley, 2012 WL 32926, at *1. The court nonetheless dismissed the hostile work environment claim for failing to show the discrimination was pervasive and regular. Id. at *2. In Feeney, the plaintiff's supervisor "continually harassed, verbally abused, and discriminated against" the plaintiff, told him he was "lucky to have this job because of his Irish ancestry," and called him a derogatory name related to his ancestry during a meeting. Feeney, 2010 WL 2629065, at *2. The court dismissed the hostile work environment claim because the stray remarks were not repeated and plaintiff pled no facts as to the frequency with which the supervisor engaged in abusive conduct. Id. at *5. The conduct in the present case is no more severe or pervasive than in Manley or Feeney, and the Court sees

15

no reason why the hostile work environment claim similarly should not be dismissed.

### D. Amending the Complaint

Plaintiff has not moved for leave to amend the Complaint, but requests in her opposition brief to "be given the opportunity to amend her complaint accordingly." [Pl. Opp'n at 11.] Because the Court cannot determine that amendment to this claim would be futile, the Court will dismiss the hostile work environment claim without prejudice. Plaintiff will have fourteen (14) days from the date of entry of this Opinion and Order to file an Amended Complaint to attempt to cure these deficiencies. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 245-46 (3d Cir. 2008). The Court grants Plaintiff leave to amend only the claim for hostile work environment under Title VII.[7]

## IV. Conclusion

The Court will grant Defendant's motion to dismiss all claims against the FAA and the DOT and to dismiss claims under § 1981 and the New Jersey LAD with prejudice. The Court will dismiss without prejudice the claim for hostile work environment under Title VII, and permit Plaintiff to file an Amended Complaint, amending only that claim to address deficiencies noted

---

[7] Furthermore, the deadlines for completing discovery and for filing dispositive motions set forth in the Scheduling Order of September 28, 2012 [Docket Item 25] continue to govern this case.

herein, within fourteen days of the date of entry of this Opinion and Order. An accompanying Order will be entered.

 **January 28, 2013**   **s/ Jerome B. Simandle**  
Date                    JEROME B. SIMANDLE  
                        Chief U.S. District Judge